FRUGÉ, Judge.
Plaintiff instituted this suit for workmen’s compensation benefits against her employer, Gulf Coast Food Stores, Inc., and her employer’s insurer, Insurance Company of North America. She claims total and permanent disability due to contact dermatitis, resulting from repeated contact with detergents, dishwater and other job-related materials. The defendants answered denying liability and later filed a peremptory exception of prescription under the provisions of LSA-R.S. 23:1209 and peremption under the provision of LSA-R.S. 23:1031.-1(D).
A hearing was held, evidence was adduced, and a judgment was rendered sustaining the peremptory exception. A de-volutive appeal was taken by plaintiff from the judgment sustaining the peremptory exception of the defendant. We reverse and remand.
Plaintiff first complained about her hand condition when she contracted dermatitis in December of 1970, at which time she had been working for her employer for more than one year. Shortly after contracting the condition, plaintiff notified her employ *568 er who referred her to Dr, Irving M. Bor-delon for treatment. This took place on January 11, 1971. The doctor diagnosed the plaintiff’s disease as contact dermatitis caused by contact with job-related materials used in washing dishes. Plaintiff continued to work, except for a period lasting from March, 1971t through June 4, 1971, during which time she was off from work and paid workmen’s compensation benefits, until she terminated her employment on May 16, 1972. She continued to see the doctor from time to time during this period until her last consultation on.May 16, 1972, the day she terminated her employment. Plaintiff’s employer was continuously aware of her condition during this period of time.
On May 16, 1972, the compensation insurer received a letter from plaintiff’s physician containing his opinion that certain precautionary measures would have to be taken for the plaintiff while working, or she would be rendered incapable of working for various periods of time. The plaintiff also testified that she was contacted in May or June of 1972, by an adjuster for the compensation insurer who informed her that she would be reimbursed for medical expenses, but that workmen’s compensation benefits would not be paid. Suit was filed on May 14, 1973, within a year of termination of employment. Defendant’s first exception was based on Louisiana Revised Statute 23:1209 which provides as follows:
“In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.”
Defendant argued that the plaintiff did not terminate her employment because of her hand condition, and, though not expressly stated in brief, implied that prescription had begun to run at some earlier point in time. Plaintiff contended that she terminated her employment because of her hand condition and argued that prescription did not begin to run until the disease forced her to terminate her employment on May 16, 1972.
The plaintiff testified at the hearing on the exception that she went to the doctor on May 16, 1972, at which time she was told by him that she could no longer continue to work under the present conditions. She terminated her employment that day. Mr. LaFleur, the plaintiff’s immediate supervisor, who was called as the defendant’s witness, was consistent during direct and cross-examination in stating that he could not recall what reason the plaintiff gave for her termination. He testified that it was possible that compensation was brought up on that day, but that he could not recall what was discussed. Later during redirect examination, his testimony varied, and he testified that he thought she gave as her reason for quitting the fact that she was to be married within a short period of time. Dr. John C. Stubblefield, the doctor visited by the plaintiff on May 16, 1972, was not called as a witness at the hearing on the exception. The letter from Dr. Stubblefield to the Insurance Company of North America written on May 25, 1972, and introduced into evidence by the defendant at the hearing, indicated that it was imperative that the plaintiff wear rubber gloves while working, or she would become incapacitated. No mention was made *569 of any advice to the plaintiff. There is no evidence on the question of what Dr. Stub-blefield advised the plaintiff on May 16th, other than the plaintiff’s testimony. It was uncontradicted by the evidence placed in the record by the defendant and supports the plaintiff’s contention that she terminated her employment because of her hand condition. The testimony of Mr. LaFleur indicates only that there is some question as to what reasons were given by the plaintiff for leaving her job. This testimony is pertinent on the issue of notice to the employer of the reasons for termination but is not determinative of the reason for the plaintiff terminating her employment.
The trial court held that since an agreement as to compensation benefits had been reached, prescription began to run from the date payment of compensation benefits was discontinued.
In Bernard v. Louisiana Wildlife and Fisheries Commission, 152 So.2d 114 (La. App. 3rd Cir., 1963), the plaintiff contracted pneumonitis in December, 1958. He received compensation and later returned to work. His second attack occurred in July, 1960, but plaintiff continued to work until a third attack in March, 1961, at which time he terminated his employment. This court held in that case that the plaintiff was not disabled for purposes of the workmen’s compensation statute until he terminated his employment because of his occupational disease. See also Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218 (1952); and Fontenot v. Great American Indemnity Co., 127 So.2d 822 (La.App. 3rd Cir. 1961).
The trial court’s holding on the issue of when the prescriptive period began for purposes of LSA-R.S. 23:1209 is not consistent with the reasoning in the above-cited cases. Prescription began in this case when the plaintiff was forced to terminate her employment because of the occupational disease from which she was suffering. The evidence presented by the defendant, as discussed above, dealt with the issue of notice to the employer, not with the issue of whether the plaintiff was forced to terminate her employment because of the occupational disease. Since the plaintiff’s suit was instituted within one year of the date when the disease manifested itself into disability and forced the plaintiff to terminate her employment, her cause of action had not prescribed.
Defendant’s second exception was based on LSA-R.S. 23:1031.1(D):
“All claims for disablement arising from an occupational disease are forever barred unless the employee files a claim with his employer within four months of the date of his contraction of the disease or within four months of the date that the disease first manifested itself. Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.”
A plaintiff is not disabled, and the four-month limitation period of the above-quoted section does not begin to run, until the plaintiff is forced to terminate his employment. LaCoste v. J. Ray McDermott and Company, 250 La. 43, 193 So.2d 779 (1967); Bernard v. Louisiana Wildlife and Fisheries Commission, supra.
The defendant argued that the plaintiff did not carry forward her burden of proof to show that she was forced to terminate her employment due to her hand condition. As stated earlier, the testimony of Mr. LaFleur indicated only that there was some question as to whether notice was given to the employer at the termination of the plaintiff’s employment. The lower court stated that the testimony of the plaintiff as to the reason for her termination was contradicted by the testimony of the defendant’s witness, Mr. LaFleur. In dealing with the exception under 1209, we were concerned with whether or not there was adequate evidence to determine the plaintiff’s hand condition forced her termination of her employment. Here in *570 dealing with the exception under 23:1031.-1(D), we must look to whether the employer or the employer’s compensation insurer received adequate notice of a claim of a plaintiff to meet the requirements of that section. The trial judge found that the contradicted testimony of the plaintiff as to the reason for the termination of her employment was not sufficient notice under the applicable statute. This decision was presumably based on the finding by the trial judge that the plaintiff did not notify her employer on May 16, 1973, that she was terminating her employment because of her hand condition.
There is no manifest error in this finding of the trial judge. However, we find there to be adequate notice under the applicable section in the fact that the plaintiff and the insurance adjuster discussed compensation within the required four-month period after the employment was terminated. Clearly the insurer had knowledge of the fact that the plaintiff was seeking compensation because the adjuster informed the plaintiff in late May or early June, 1972, that compensation would not be paid but only her medical expenses would be paid for by the insurer. This evidence placed in the record by the plaintiff and uncontradicted and unchallenged by the.defendant indicates that the insurer was made aware of the claim by the plaintiff within the required period of time. This fulfilled the requirement of 23:1031.1(D).
For the reasons assigned, the judgment appealed is reversed and the case remanded for further proceedings not inconsistent with this decision. All costs of this appeal are assessed against defendants-appellees.
Reversed and remanded.
CULPEPPER, J., dissents and assigns written reasons.