BEER, Judge.
Yalco Crump was employed by National Gypsum Company for twenty-eight years, the last twenty as a punch press feeder. He fed asbestos sheets (about two by four feet in size) into a punch press which cut and punched holes in them. On January 31, 1976, he retired in compliance with the company’s mandatory retirement policy, having reached the age sixty-five.
Several months following his retirement, Crump filed this suit against National Gypsum and its insurer, Hartford Accident and Indemnity Company, alleging that he had become totally and permanently disabled as a result of contracting asbestosis in the course of his employment. The trial court awarded total and permanent disability at the rate of $85.00 per week for a period of 500 weeks, plus all medical expenses up to the statutory maximum.[1] No written reasons were given.
Defendants-appellants appeal, reurge their exception of prescription and strenuously contend that the trial court erred in concluding that Crump bore the burden of proving his alleged disability.
Appellant’s prescription contention lacks merit. La.R.S. 23:1031.1(E) (Supp. 1977) corresponds exactly with La.R.S. 23:1031.1(D) (as amended Acts 1958, No. 39, § 1), the pre-1975 amendment version. In interpreting the latter provision, our courts have consistently held, in cases of an occupational disease which gradually manifests itself, that knowledge on the part of the plaintiff that he has the disease is not sufficient, standing alone, to commence prescription. Chivoletto v. Johns-Manville Products Corp., 330 So.2d 295 (La.1976); LaCoste v. J. Ray McDermott & Co., Inc., 250 La. 43, 193 So.2d 779 (1967); Vincent v. City of New Orleans, 326 So.2d 401 (La.App. 4th Cir. 1975), writ refused, La., 329 So.2d 760; Marcantel v. Gulf Coast Food Stores, Inc., 300 So.2d 566 (La.App. 3rd Cir. 1974), writ ref., La., 304 So.2d 668.
Appellants’ contention regarding proof of disability has merit notwithstanding the fact that there is no disagreement among the doctors, all of whom testified that Crump does, indeed, have asbestosis. His x-rays reveal “early manifestation of asbes *1376 tosis;” his personal physician, Dr. Albert Bloom, diagnosed asbestosis; and Dr. Morton Brown, the defense medical witness, confirmed the existence of the condition. However, the record does not support the trial court’s conclusion that asbestosis has caused Crump to be permanently and totally disabled.
Dr. Bloom, who first saw him in 1971 (and, early on, diagnosed asbestosis), found, at that time, that Crump was in no distress, with lung capacity estimated by Dr. Bloom as close to normal. Other pulmonary test results were within normal limits. Crump was seen on a bi-monthly or monthly basis from 1971 through 1977, and, during that time, Dr. Bloom found no increase or progression in the disease. However, Crump did suffer, increasingly, from congestive heart failure, or cardiac decompensation, and was treated by Dr. Bloom for this condition throughout the period noted above.
Dr. Bloom discussed the disabling effect (or lack thereof) of the asbestosis as affecting Crump’s ability to work and concludes that cardiac decompensation and, more particularly, old age are the real reasons that Crump should not return to full-time manual labor.
Dr. Russell C. Klein, who examined Crump in December, 1976, had, previously, interpreted two lung function studies made at St. Charles General Hospital in October, 1975 and February, 1976. He found that the lung examination results were within normal limits, and, after making the necessary comparisons, that current x-rays indicated no progression of the disease since the October, 1975 and February, 1976 x-rays were taken. He concluded that although Crump had asbestosis, he was in good condition and not disabled by the disease which was essentially unchanged from its non-disabling status in 1975 and 1976. These conclusions are confirmed by the only other medical expert, Dr. Morton Brown.
In summary, the record casts substantial doubt on the existence of an alleged total disability caused by asbestosis. Only the lay testimony of Crump and various family members give any support to the trial court’s apparent determination that asbestosis, and not plaintiff’s age, heart condition (and the condition of obesity which aggravated the heart condition), are the cause of his alleged total disability.
The record does, however, support the conclusion that Crump has experienced a minor reduction of lung capacity as a result of asbestosis. This condition is, essentially, a non-disabling residual arising from minor, yet permanent, impairment of plaintiff’s lung function and does, therefore, entitle him to compensation under La.R.S. 23:1221(4)(p). See, e. g., Ventress v. Danel-Ryder, Inc., 225 So.2d 765 (La.App. 3rd Cir. 1969).
Following the applicable provisions of La. R.S. 23:1221(4)(p), the trial court should render an award of weekly benefits, limited to one hundred weeks, at a weekly rate to be determined by a consideration of the evidence. In this instance, however, we must make that determination, and we set the amount at $50.00.
Accordingly, the amended judgment of the Civil District Court for the Parish of Orleans, dated February 15, 1977, is recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Valeo Crump, and against the defendants, Hartford Accident and Indemnity Company and National Gypsum Company, for compensation at the rate of $50.00 per week for a period of 100 weeks, with interest from the date of judicial demand (June 1, 1976), plus all taxable costs of these proceedings.[2]
As recast, the judgment is affirmed.

*1377
RECAST AND, AS RECAST, AFFIRMED.

LEMMON, J., concurs and assigns reasons.
SCHOTT, J., dissents.

. This award apparently was based on La.R.S. 23:1221 prior to its amendment in 1975, without consideration of the applicability of La.R.S. 23:1221 as amended.

. The decree in this case is not affected by Louisiana Constitution of 1974, Article 5, Section 8(B), since the panel is unanimous in its view that the judgment of the district court awarding permanent and total disability must be reversed. All three judges on the panel vote to reverse that judgment, and there are no dissents in that regard. The judge who dissents does so only on the ground that there should be no award and, thus, dissents only from the action taken by this court to render an award of $50 per week for 100 weeks.