367 So.2d 300 (1979)
Valco CRUMP, Plaintiff-Appellee-Relator,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY and National Gypsum Company, Defendants-Appellants-Respondents.
No. 62299.
Supreme Court of Louisiana.
January 29, 1979.
*301 Earl G. Pitre, Metairie, for defendants-appellants-respondents.
Peter Frank Liberto, New Orleans, for plaintiff-appellee-relator.
TATE, Justice.
The plaintiff Crump claims workmen's compensation. He sues for benefits for total disability caused by an occupational disease (asbestosis) contracted during his employment with National Gypsum Company. La.R.S. 23:1031.1 (1975). His employer and its compensation insurer are made defendants.
The trial court awarded Crump compensation for total and permanent disability at the rate of $85.00 weekly, not to exceed 500 weeks in all. The court of appeal reversed the trial court's finding of disability, but found that Crump was entitled to recover $50.00 weekly for a period of 100 weeks because of a non-disabling but permanent impairment of his lung function, La.R.S. 23:1221(4)(p). 357 So.2d 1374 (La.App. 4th Cir. 1978).
We granted certiorari, 359 So.2d 622 (La. 1978), because we felt that the intermediate court had applied an incorrect standard of review.
On appellate review, the trial court's factual findings of work-connected disability are entitled to great weight. They should not be disturbed where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable.
See: Cadiere v. West Gibson Products Company, 364 So.2d 998 (La.1978); Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 *302 (La.1977); Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La.1974). See also Canter v. Koehring, 283 So.2d 716 (La.1973).
As noted by these decisions, the reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
Facts
The plaintiff Crump had been employed by National Gypsum for twenty-eight years, the last twenty as a punch-press operator. It is undenied that the plaintiff contracted asbestosis in the course of his employment due to his exposure to asbestos dust. The defendants maintain, however, that it has not ripened into disability to work.
The plaintiff commenced work for the company in 1946. Lung x-rays taken in 1969 indicated the existence of the disease. Between 1971 and 1977, the plaintiff was under treatment for his asbestosis, in an effort to control it and to prevent its aggravation.
Asbestosis is a disease which results from scarring of the lungs by exposure to asbestos dust. Because of this scarring, the lungs have less capacity and furnish less oxygen to the victim's blood. The record reflects that the disease may progress gradually or in spurts, but it also indicates that progression of the disease may be inhibited by factors (such as wearing masks at work) which reduce the exposure to the irritant.
The uncontradicted testimony of the plaintiff Crump and members of his family (including a brother who is a business manager of the union representing National Gypsum's employees) shows a gradual increase of the symptoms (shortness of breath, coughing, tiring upon exertion) in the last years of Crump's employment. Following his mandatory retirement upon reaching the age 65 in 1976, Crump has been unable to secure other employment (except one short-term job in which he earned $12.00), and upon exertion (such as walking or attempting to cut his lawn) he is short of breath and forced to desist.
For reasons to which we shall advert, the medical evidence, in conjunction with this uncontradicted lay testimony, supports a factual conclusion that Crump's asbestosis progressed from non-disabling in 1969 to being a substantial contributory cause of his present disability to perform manual labor as of the time Crump's employment terminated in 1976.
Legal Principles Applicable
The legal test for disability caused by occupational disease is the same as that for disability cause by accident. La.R.S. 23.1031.1 A; LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779 (1967).
Claims for compensation are prescribed unless the employee files a claim within four months of the date the disability manifests itself. La.R.S. 23-1031.1 E; LaCoste, cited above. The mere knowledge of an employee that he has the disease is not a manifestation of the disability. LaCoste; cf. also Chivolette v. Johns-Manville Products Corp., 330 So.2d 295 (La.1976). Ordinarily, for workmen's compensation purposes, a disease does not develop or manifest itself, La.R.S. 23:1209, where an employee continues at his employment with increasing difficulty, until the time when the claimant's employment terminates, since an earlier date is conjectural so long as the employee actually continues to perform his duties. Bolden v. Georgia Casualty & Sure. Co., 363 So.2d 419 (La.1978) and decisions therein cited.
To be compensable, the disability must result from work-cause, either accident or occupational disease. In determining disability, the entire record, both lay testimony and medical evaluation and opinion, should be considered; for this issue of fact requires the judicial application to all the evidence of the legal test of disability, to which medical estimates of the ability or not to work must yield. Lucas v. Insurance *303 Company of North America, 342 So.2d 591 (La.1977); Tantillo v. Liberty Insurance Company, 315 So.2d 743 (La.1975); Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972).
Basis of Trial Court's Determination of Disability
The trial court found that Crump was totally disabled by 1976 to perform manual labor, as a result of the work-contracted asbestosis. In addition to the lay evidence summarized above, this determination is supported by the medical evidence which is not inconsistent with the progression of the disease into disability following its non-disabling inception in 1969 or earlier.
Dr. Morton Brown, a pulmonary disease specialist, concluded that the x-ray and lung tests (showing the progress of the asbestosis) supported a finding that with exertion Crump gets short of breath and the exertion causes untoward effects on his body which should not be allowed to occur (e. g., strain on heart, etc.), Tr. 39. Comparison of the various x-ray interpretation reports[1] and lung function studies [2] supports a finding that by 1973 or so the disease had progressed into greater manifestation than in its earlier stages.
All three physicians who examined Crump agreed that he is now disabled from the performance of manual labor. In reversing the trial court, the court of appeal felt that the testimony of two (Dr. Bloom and Dr. Klein) of them could be characterized as showing that, instead of the asbestosis, the cause of Crump's disability was primarily his age and weight.
For the reasons to be stated, under the facts of this case the court of appeal was in error in substituting its evaluation of the testimony of these physicians for that of the trier of fact, and in holding that by reason of such evaluation the evidence of non-disability preponderated over the other evidence summarized above, which supports the trial court's finding of disability.
Dr. Bloom
The intermediate court relied heavily upon the testimony of Dr. Albert Bloom, the plaintiff Crump's personal physician from 1971 to 1977. Dr. Bloom found the plaintiff to be disabled from manual work, by reason of the asbestosis (decreasing the capacity of the lungs), cardiovascular difficulties (arising from insufficient oxygen supply from the lungs, due both to Crump's asbestosis and his being overweight), and his age of 65.
The physician generally testified, however, that the asbestosis had not progressed from 1971 through 1977, which he opined was due to the workers wearing masks at work following 1971 (which theoretically inhibits progression of the disease). He thought that the asbestosis was not disabling, simply because in fact Crump had performed the duties of his employment until his retirement in 1976.
The trial court apparently accepted Dr. Bloom's evaluation that Crump is now disabled from performing manual labor by decreased oxygen supply from the lungs, to which the work-caused asbestosis is a substantial contributory cause.
However, the trial court rejected Dr. Bloom's conclusions that the disease had not *304 progressed from its 1971 condition into disability in 1976. We cannot say the trial court was unreasonable in so doing.
In the first place, Dr. Bloom admitted that he was testifying from memory and without having preserved any office notes, Tr. 6, 42, while the actual x-ray reports of the employer's radiologists do show some progression of the disease (see footnote 1, and see below). In the second place, the circumstance that Crump had (although with difficulty) performed the duties of his employment for the last year or so before his retirement is not determinative of whether he is legally disabled within the meaning of the workmen's compensation statute.
Dr. Klein
Dr. Russell Klein, a specialist in the field of pulmonary disease, testified for the defendants. Dr. Klein had examined Crump once, in December 1976 (eleven months after the latter's employment terminated).
Earlier, at the request of the defendants, he had also interpreted two lung function tests (of October, 1975 and February, 1976). Based on a comparison of these studies with similar ones conducted in 1973 and 1974, and on a comparison of x-rays taken by him in December 1976 with the report of one taken in March 1976, he found no progression of the disease.
He further testified that the first x-ray interpretations supporting a diagnosis of asbestosis were taken in 1969, and that there seemed to be no progression of the disease by 1976. Tr. 73. He opined that the plaintiff's functions were within normal limits for people of Crump's age and size, although he admitted that Crump was disabled from performing manual labor (primarily, he thought, because of his age).
The record reflects the following reasons to discount this specialist's testimony:
His opinion was founded on limited pretrial data furnished to him concerning Crump's condition prior to 1973 and 1974, especially insofar as to any aggravation of the disease following its 1969 x-ray manifestation and its aggravation by 1973 (see footnote 1).
For instance, he was not afforded access to any earlier x-ray examinations. Tr. 69.
Nevertheless, on cross-examination at the trial, he was for the first time afforded an opportunity to compare the 1969 x-rays. He was forced to admit that the 1976 x-rays showed progression of the disease. He agreed with the trial court's comment that the 1976 x-rays showed a worse condition of the lungs. Tr. 79-80.
Further, Dr. Klein admitted that he tested Crump only at rest and that, if there had been exertion, there might have been less of the necessary oxygen produced by the lungs. Tr. 74. He explained that he did not do so "basically because he [Crump] gave me no history of being limited by exertion or shortness of breath." Tr. 74. We note that, for instance, another physician (Dr. Brown) who examined Crump at about the same time elicited from the patient in compiling his history the complaint that he "gets short of breath with exertion," Tr. 34, and that the lay evidence and the testimony of his personal physician (Dr. Bloom, see, e. g., Tr. 8) indicates that shortness of breath was Crump's complaint from the onset of the disease.
The trial court was thus not unreasonable in discounting Dr. Klein's conclusions of non-progression and non-disability, when it found that disability was proved by the preponderance of the evidence, medical and lay, of the record as a whole.
Conclusion
Accordingly, the intermediate court erred in disregarding and reversing the trial court's factual determination that the plaintiff Crump had proven his work-caused total and permanent disability by a preponderance of the evidence. We therefore reverse and set aside the judgment of the court of appeal, and we reinstate the judgment of the district court. All costs of these proceedings are to be paid by the defendants-appellants.
*305 COURT OF APPEAL REVERSED; DISTRICT COURT JUDGMENT REINSTATED.
SUMMERS, C. J., dissents.
BLANCHE, J., not participating.
NOTES
[1] See: P-22 (1/73); P-20 (10/73) (an additional marked thickening of the pleura); P-2 (2/76, notes "widespread changes in both lungs"); P-21 (2/76, comparing same x-rays with earlier ones: no change from 1974; but noting extensive irregularities apparently not found in 1972 x-ray study, see P-14 (2/72)).
[2] The pulmonary function studies, which were made in 1972 and following, show a vital capacity or lung function about 80% of the predicted "normal" capacity. The defendant's specialist (Dr. Klein) felt that the series (1973, 1974, 1975, 1976) he examined marked no progression of the disease. If the disease had progressed into a legal (but non-manifest) disability by 1973, the lack of further progression may not be determinative. However, we do note an accelerated decrease in the percentages between 1974 (86%) (P-28), 1975 (84%) (D-3), and 1976 (80%) (D-4). The plaintiff's specialist (Dr. Brown) also noted that the studies indicated no evidence that the measurements were made after exercise, Tr. 31.