SHORTESS, Judge.
Algiers Muse (plaintiff) sued his former employer, Roy H. Spears Lumber Company (defendant) and Gulf States Underwriters of Louisiana, Incorporated, for benefits under the Louisiana Workman’s Compensation statutes. After hearing all the evidence, the court found for defendant, prompting this appeal by plaintiff.
Plaintiff was employed by defendant doing a variety of tasks, from cutting and edging lumber to cleaning around the lumber yard. On June 3,1980, he was working an edger when a piece of lumber jammed while passing through the machine. When it was ejected, it struck him, forced him back into a pile of lumber and caused a cervical strain.
At trial, the court heard testimony from plaintiff, his wife, three of defendant’s employees, and the examining physician, Dr. C.G. Forrest. Plaintiff also introduced the deposition of Dr. Homer D. Kirgis, a neurosurgeon with the Ochsner Clinic in Jefferson, Louisiana.
Plaintiff saw Dr. Forrest on the day following the injury. He examined plaintiff and found some tenderness at the base of plaintiff’s skull. He concluded that the injury would not prevent plaintiff from returning to work. Plaintiff testified that he tried to continue to work but could not because of the pain and that after seeing Dr. Forrest a few times began to go to Lallie Kemp Charity Hospital for lower back and neck pain.
Defendant introduced plaintiff’s weekly time cards covering the period from May 7, 1980, through July 16, 1980. The cards established that for the five weeks between May 7 and June 4, 1980, plaintiff worked 52½ hours, 49¾ hours, 46 hours, 53 hours, and 47 hours, respectively. The latter period, May 29 through June 4, includes the day of the injury (June 3) and concludes on the date of plaintiff’s first doctor visit.
For the pay periods from June 5 through July 16[1] (after the accident), plaintiff worked 407⅛ hours, 1772 hours, 25 hours, 58 hours, 3274 hours, and 9¾ hours. Although the hours worked each week are slightly less for the weeks after the accident than for the weeks before the accident, we note that the daily totals do not indicate an employee who is working four or five hours per day and then succumbing to unbearable pain. . Instead, the cards show the plaintiff averaging approximately an eight-hour work day for the days on which he did any work at all. The cards indicate, however, that he was wholly absent from work some days. Typical was the week of June 19 through June 25 which shows zero hours on June 19, eight hours on June 20, zero hours on June 21 and 22 (Saturday and Sunday), IV4 hours on June 23, and 7¾ hours each on June 24 and 25. We also note that a little less than a month after the accident, during the week of June 26 through July 2, plaintiff logged 58 hours, working a seven-day week, the individual daily hours ranging from 7¾ hours to 97⅛ hours.
Plaintiff testified on redirect examination that he customarily punched his own time card. When confronted on cross-examination with the hours recorded on his time cards, he repeatedly claimed that he did not know anything about all that.
Plaintiff complained of pain whenever he tried to “work steady.” He admitted hauling paper wood since he left defendant but claimed he had to quit this job, also, since stooping and bending his neck and back brought on pain. Plaintiff also admitted doing other types of work since the accident, including raking and cutting yards and complained of minimal pain from these activities. He said that he can work in his garden at home for up to three hours be *31 fore feeling pain. The testimony of Ethyl Lee Muse, plaintiffs wife, was substantially the same as that of plaintiff.
Two of defendant’s office workers, Minnie Alford and Beatrice Wall, testified. Alford said that the reason some of the time cards had no times punched on certain days was that plaintiff just didn’t show up for work on those days. She also testified that she was not aware of any practice among the employees of punching each other’s time cards in and out.
Plaintiff’s last day of work with defendant was Friday, July 11. Beatrice Wall testified that on that day “Mr. Spears let him go ... for not following orders.” She said that Spears’ action had nothing to do with plaintiff’s physical condition.
Roy Eugene Spears, son of defendant’s namesake, testified that on July 11 plaintiff had been standing by the water cooler. He was approached by the elder Spears; the two had “some words” and then Spears fired plaintiff. The witness testified that the exchange between the two men was “fairly heated.” This coincides with plaintiff’s own testimony that on July 11 Spears “got hot and he run me off.”
Finally, we note the testimony of Dr. Forrest and the deposition of Dr. Kirgis. Dr. Forrest stated that he would not rate plaintiff as disabled. At his initial examination of plaintiff on June 4, Forrest noted tenderness at the base of plaintiff’s skull. On June 6, plaintiff complained that he had not improved. He would not let Forrest turn or move his head, but Forrest noticed that as plaintiff moved about the office he moved his head freely. Dr. Forrest also examined the x-rays taken by Dr. Fred Lewis at Hood Memorial Hospital but found nothing abnormal other than a minor narrowing of the cervical discs and minor spur formation on a vertebra. When plaintiff was last seen on June 16, Forrest again noticed plaintiff moving his head and neck freely when he was not being examined.
The deposition of Dr. Homer Kirgis was introduced by plaintiff. Kirgis saw plaintiff in October of 1980 and stated that after examining him, his diagnosis was that plaintiff “probably had sustained a straining injury of the muscles of the neck. I thought that the symptoms would clear in the relatively near future.” He also stated that he did not believe plaintiff was capable of doing manual labor at that time, although he felt that plaintiff’s condition should resolve itself within three or four months.[2] Kirgis saw plaintiff again approximately one year later and said that plaintiff indicated that moving his head and neck caused hypersensitivity over the left side of his body, including the left side of his face and head. When Dr. Kirgis questioned him about this, he observed that plaintiff said, “It was the left side that was hurt.” Dr. Kirgis observed that this statement was made “as though inferring that because this object may have struck more on the left side of the body that in some way caused him to be unduly sensitive to the left side of the body. It was at this time he did not appear to me that he was cooperating completely with the testing, and if he was, that he had developed a psychiatric problem.” Kirgis stated that he did not observe anything else significant in that September, 1981, visit and further testified, “I don’t believe he has any disability at this time referrable to the neck that would keep him from working, that is, no physical disabilities.”
The trial court rendered judgment for defendant and set forth his written reasons for judgment as follows:
In the opinion of the Court the plaintiff was injured in the course and scope of his employment, but that ... injury did not cause plaintiff to be disabled. Plaintiff continued to work fairly regularly from the date of the accident until he and Mr. Spears had a disagreement which *32 resulted in plaintiffs dismissal. The disagreement and resulting dismissal was the real reason that plaintiff was unable to continue working.
In said reasons, the trial court noted that the plaintiff continued to work “fairly regularly” from the date of the accident until his disagreement with Spears. The court found that the disagreement resulted in plaintiffs dismissal, not any physical incapacity of plaintiff.
We find support for these conclusions in the evidence adduced at trial. The time cards indicate the plaintiffs ability to work eight-hour days after the accident, and the testimony of the physicians provides a basis upon which the trial court could reasonably make a credibility evaluation adverse to plaintiff regarding his allegations of pain. Both physicians noticed some tenderness in plaintiffs neck, but not so much as to make him disabled. Dr. Forrest noticed that the soreness and limitation of motion coincided with his examinations and that the limitation disappeared when plaintiff moved around his office. Finally, Dr. Kir-gis noted plaintiffs inference that because the object struck him on the left side of his body, it would cause him to be unduly sensitive on that side and attributed plaintiffs attitude and lack of cooperation to the development of a possible “psychiatric problem.”
Although it is clear from the record that plaintiff did suffer an accident, the trial court was apparently not convinced after hearing all the testimony that the plaintiff endured such substantial pain as to render him disabled. The value of such findings and our duty regarding them was succinctly set forth by the Third Circuit Court of Appeal in Downs v. Rapides General Hospital, 398 So.2d 116, 118 (La.App. 3rd Cir.1981), writ denied, 409 So.2d 611 (La.1981):
“[Pjhysical inability to return to work and inability to return to work due to substantial pain are questions of fact. The determination of fact made by a trial court will not be disturbed when there is evidence before the court, which evidence, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s findings, unless those findings are clearly wrong. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979). In this regard, we stated in Conlay v. Houston General Insurance Company, supra, 370 So.2d 196 at page 200 (La.App. 3 Cir.1979) [writ granted, 371 So.2d 618 (La.1979), appeal dismissed, 374 So.2d 650 (La.1979)]: ‘... The trial court’s favored position in seeing and hearing live witnesses is especially important when the factual determination involves a concept as subjective as pain. Colorful inflections and subtle nuances’ given to spoken and physical expressions describing the degree of pain simply do not come out in the black and white transcription of testimony contained in the appellate record.’ ”
Based upon the entirety of this record, we cannot say that the trial court was clearly wrong in holding that, under the available standards for proof of disability under the Louisiana Workman’s Compensation scheme, plaintiff failed to prove such disability as to entitle him to recover. For the foregoing reasons, the judgment of the trial court is affirmed. All costs are taxed to plaintiff.
AFFIRMED.

. The time card for the week of July 3 through July 9 was missing. However, defendant's exhibit No. 2 was a photocopy of the company's earnings record for Algiers Muse, which indicated the time worked for that period.

. This diagnosis was made after this history was taken from plaintiff: "The history that I recorded was he had to stop working at once and was seen by Dr. Forrest, who gave him medication and advice that he apply heat. Subsequently he was seen at weekly intervals by Dr. Forrest and was discharged, but he said, or at least I recorded that he told me he had never thought he was able to return to work. It was my impression he had stopped working at the time of the injury, but I might be mistaken."