BARRY, Judge.
Plaintiff appeals the dismissal of his workmen’s compensation suit.
On August 25, 1982 plaintiff, a truck driver, struck his head while backing a *718 tractor at Dan Kelly Warehouse, Inc., his employer. In April, 1983 plaintiff missed several days of work without calling in and was terminated. He sued for compensation and penalties and amended to add the employer’s insurer, Commercial Union Insurance Company, and to state a wrongful termination claim. There was a stay order involving the employer (who filed bankruptcy proceedings) and no allegation that it had insurance covering the latter claim, so the trial court properly did not consider the wrongful discharge claim. The court held plaintiff did not carry his burden of proof. We affirm.
After the accident the employer sent plaintiff to Dr. Alaynick who diagnosed a contusion of the right ear, a hearing problem and a cervical sprain with muscular neck pains. X-rays were negative except for osteoarthritic degenerative changes in the area of C-5, 6 and 7. Analgesics, heat, a cervical collar and rest were prescribed. By August 27, 1982 the hearing problem had subsided and Dr. Alaynick told plaintiff he could resume work on or about August 30th. On August 31st Dr. Alayn-ick found a good range of neck motion, advised discontinuing the neck brace, and discharged plaintiff to work September 2nd.
Plaintiff worked from September 2, 1982 until April 13, 1983 when he did not go to work. He claimed car problems on his way to work and said he walked over a mile to get back home. He sweated excessively, felt dizzy and the back of his head and neck hurt. Plaintiff testified that from the time of the accident until April, 1983 the aches in his head, neck and back would come and go. April 13, 1983 was “[t]he first time it got that bad....”
Prom September 2, 1982 to April, 1983 plaintiff saw other doctors for various reasons. On September 8, 1982 he saw Dr. Flannigan for numbness in his forearms, but he did not mention headaches or the accident. Plaintiff had not worked for several days and Dr. Flannigan gave him a note to return to work.
Plaintiff sustained facial injuries in December, 1982 when he was struck by a bottle or glass and received treatment at Ochsner Hospital. Those records do not reflect any complaints related to the job-accident. Plaintiff saw Dr. McGee on February 28, 1983 because of a cold and upper respiratory infection. Dr. McGee said the visit was to obtain a return to work slip and plaintiff did not mention the accident.
After the April 13, 1983 episode plaintiff went to Dr. Green who (according to plaintiff) discovered high blood pressure and referred him to Dr. Epps, a neurosurgeon. Dr. Epps conducted a sensory and general neurological examination and his impression was that plaintiff had a degenerative disk disease in the cervical spine and a possible carpal tunnel syndrome. Considering the x-rays taken previously which showed osteoarthritic changes, he stated those changes existed prior to the injury. Dr. Epps placed great emphasis on plaintiff’s claim that he was still experiencing pain from this job-accident which could have aggravated the pre-existing arthritic condition. After prescribing an anti-inflammatory drug and an analgesic, Dr. Epps saw plaintiff again on May 9th and June 7th and found he improved. When he saw plaintiff on November 15, 1983 with continued complaints of headaches and neck problems, Dr. Epps recommended an EMG, a CAT Scan and physical therapy. Dr. Epps admitted his opinion would be different if plaintiff had not experienced constant pain and conceded an arthritic condition can flare up without trauma.
Dr. Applebaum, a neurosurgeon, saw plaintiff in October, 1983 at defendant’s request and testified plaintiff related numbness in both hands and neck soreness from the April 13, 1983 incident and initially denied any history of trauma. Plaintiff informed the doctor of his treatment by Dr. Epps as well as his examination by Dr. Jarrott at his attorney’s request.[1] X-rays *719 ordered by Dr. Applebaum on October 26, 1983 and taken by Dr. Schneider show moderate degenerate changes in the cervical spine (C-5, C-6, C-7) manifested by disk narrowing and bony spurs at the joint levels, a common finding in a forty-one year old person. Dr. Schneider compared his x-rays with those taken on August 25,1982 and testified there were no progressive changes that would indicate a healing reaction to trauma sustained prior to the first films. Dr. Applebaum concluded there was a possibility plaintiffs numbness was caused by tardy ulnar nerve palsies which is consistent with Dr. Hightower’s subsequent finding of peripheral polyneuropathy not related to trauma. Dr. Applebaum found no symptoms consistent with nerve root irritation and felt plaintiff could return to work.
On February 9,1984 Dr. Hightower, neurologist, recommended by Dr. Epps, conducted electromyography and nerve conduction studies. The tests indicated peripheral polyneuropathy (a dysfunction of the nerves in the extremities caused mostly by alcoholism and diabetes and not by trauma) and that plaintiff had nerve root irritation at C-7 of the spinal cord. That irritation is only an equivocal finding since further testing was not done. Dr. Hightower, said that signs of muscle spasm and neck pain with radiation into the patient’s arm would be the necessary clinical symptoms to be correlated with his suggestion of a nerve root irritation.
Plaintiff’s co-workers, Raymond Algere, Russell Miles, David Armstrong, testified he did not complain of neck or head pain prior to the accident, but made such complaints after his accident. However, their testimony does not show that plaintiff continued to suffer from August, 1982 to April, 1983. Margaret Givens, who lived with plaintiff, said he complained of headaches and neck problems for the first half of the year, then his fingers. She testified plaintiff was on medication for high blood pressure.
Plaintiff testified his complaints did not go away when he returned to work in September, 1982. He still had pains in the right side of his head, back of his neck, on one side of his face, and his eye would water. Plaintiff said he did not tell the doctors he saw between August, 1982 and April, 1983 about the job-accident and alleged problems because he was afraid of losing a “good-paying” job. He said he was disciplined often prior to April 13,1983 for not calling in when he did not go to work and he had been suspended for three days subsequent to the accident. Plaintiff admitted having a criminal record and that he lied on his work application. He said he did not miss work from September 2, 1982 to April 13, 1983 because of the job-injury although he missed work during that period. He testified he would sometimes experience a headache and some days he would feel normal. He pinpointed April 13, 1983 when his condition “got that bad....” Since then he has worked as a cement finisher although it appears he contradicted himself as to how many days a week he worked.
Plaintiff contends the trial court erred by refusing to order an independent medical examination under La.R.S. 23:1123. However, it does not appear the requisite application was made. Plaintiff filed a rule which stated the insurer had not sent a letter of credit for medical evaluation and treatment of plaintiff in favor of plaintiff’s doctor. The record contains a letter which indicates that after discussions at a pre-trial status conference, the insurer agreed to pay for an independent medical examination if the examining doctor chosen by the court could have access to the evaluations of the other doctors.
In February, 1984 the insurer moved to compel a physical examination by their orthopedist, Dr. Grunsten, allegedly agreed to by plaintiff. Defendant’s motion was *720 dismissed. In a letter to defendant’s counsel, plaintiffs attorney stated his client would not see Dr. Grunsten and that defendant’s only alternative was to petition the court for a court appointed independent medical examination. There is nothing to indicate defendant petitioned the court and plaintiff does not allege either party made such an application. After trial plaintiff filed a Motion for a Partial New Trial based on his entitlement to an independent examination. There is no allegation that either party requested a pre-trial examination by a court appointed physician.
La.R.S. 23:1123 does not require that the trial court appoint a physician and order an examination post-trial if there has been ample time prior to trial to request such an order. Benoit v. Phillips Iron Works, Inc., 401 So.2d 557 (La.App.3rd Cir.1981); D’Aville v. Travelers Insurance Company, 295 So.2d 454 (La.App. 3rd Cir.1974). The trial court properly denied the motion.
A plaintiff bears the burden by a preponderance of evidence to show that the work accident caused the disability. Field v. Winn Dixie Louisiana Inc., 427 So.2d 616 (La.App. 5th Cir.1983); Juneau v. Tulane Industrial Laundry, 358 So.2d 347 (La.App. 4th Cir.1978). An employee’s disability is compensable if a work related accident aggravates a pre-existing condition to produce disability. Self v. Riverside Companies, Inc., 382 So.2d 1037 (La.App.2d Cir.1980), writ refused 385 So.2d 793 (La.1980). Residual pain and discomfort following a work-related injury will be considered disabling only if it is substantial or appreciable and where there is sufficient evidence to substantiate the pain. Brown v. Avondale Shipyards, 422 So.2d 256 (La.App. 4th Cir.1982). The trial court’s findings on factual issues are entitled to great weight and should not be disturbed on appeal unless those findings are clearly wrong. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979).
Plaintiff contends the testimony of Dr. Epps should be given substantial weight. That testimony relied heavily on plaintiff’s subjective complaints and did not state with certainty that plaintiff’s degenerative arthritic condition was aggravated by the August, 1982 accident. Dr. High-tower’s objective findings of C-7 nerve root irritation were equivocal at best and the testimony of Drs. Applebaum and Schneider clearly refuted the contention that the accident was disabling. No doctor found the expected muscle spasms and radicular pain associated with such a nerve root irritation.
Plaintiff candidly admitted the pain was not constant and the long walk home on April 13, 1983 had triggered his inability to work. Plaintiff worked over seven months after the accident without missing a day because of the injury.
The trial court evaluates the testimony of all witnesses and may accept or reject expert medical testimony according to the expert’s qualifications and credibility. Jennings v. Halliburton Company, 346 So.2d 268 (La.App. 4th Cir.1977), writ denied 349 So.2d 884 (La.1977). The preponderance of the medical testimony shows plaintiff did not suffer a disabling condition from the subject accident.
Judgment is affirmed.
AFFIRMED.

. Dr. Jarrott did not testify and defendant correctly notes it is presumed this testimony would not have favored plaintiff. Mitchell v. Keyes Fibre Company, 281 So.2d 815 (La.App. 3rd Cir. *719 1973). Dr. Jarrott’s report states a diagnosis of cervical neuralgia possibly due to a disk syndrome.