488 So.2d 999 (1986)
Lawrie G. WILLIAMS
v.
KEYSTONE GENERAL CONTRACTORS, INC. and Travelers Insurance Company.
No. 85-C-0981.
Supreme Court of Louisiana.
May 20, 1986.
Rehearing Denied June 19, 1986.
*1000 Fred A. Blanche, III, Baton Rouge, for plaintiff-applicant.
Grayson H. Brown, Baton Rouge, for defendants-respondents.
LEMMON,[*] Justice.
The issue in this workmen's compensation case is whether plaintiff's employment with defendant had been terminated before the accident which caused plaintiff's allegedly disabling injury. The trial court found that there was no employment relationship on the date of the accident and dismissed the suit. The court of appeal affirmed in an unpublished opinion. 468 So.2d 40 (1985). We granted certiorari to review these rulings. 470 So.2d 116.
Defendant corporation was a general contractor. Plaintiff worked for defendant in Morgan City as general manager from August, 1981 until December, 1981, when he was terminated because of the lack of work. On January 2, 1984, defendant's president, Robert Wadhams, rehired plaintiff at a salary of $800 per week. Although there was still little work in the Morgan City-Houma area, plaintiff was employed to "hustle some work" in the Baton Rouge area where plaintiff lived and had numerous contacts in the industrial plants.
The accident occurred on February 23, 1984. Wadhams testified that plaintiff had been laid off on February 4, while plaintiff testified that he had not been separated from employment prior to the accident. In addition to the directly conflicting testimony of these parties, there was considerable other evidence bearing on the issue of plaintiff's employment status on the date of the accident.
Defendant's payroll records supported a termination date of February 4. Plaintiff was paid on a weekly basis, as were all other employees except the president. His last pay check was dated February 11, 1984, covering work for the week ending February 4. The computer printouts of the payroll records for the months of January and February showed that plaintiff did not work for the corporation after February 4.
As to the absence of checks after February 11, plaintiff explained that Wadhams told him on January 11 that he could no longer pay him on a weekly basis because of cash flow problems. When Wadhams changed the pay days to the first and fifteenth of the month, plaintiff's next check was not due until after the accident.
On the other hand, considerable evidence supported a conclusion that plaintiff's employment continued through the date of the accident. Plaintiff retained possession of the company truck after February 4. On February 14 plaintiff obtained a set of bid specifications on defendant's behalf for work on the Capital Annex Building and furnished a $30 cash deposit. He delivered these plans to Wadhams and worked actively in preparing estimates for the project (although no bid was ever submitted because defendant lost its bonding capacity). On the day of the accident plaintiff was driving defendant's truck on his way to an appointment to discuss the sale of defendant's crane with a prospective purchaser. After the accident, Wadhams sent a separation notice to the Office of Employment Security which indicated that plaintiff had last worked on February 24 and that he had been separated from employment on March 6 because an injury sustained in an accident prevented him from making the daily trip from Baton Rouge to Morgan *1001 City. On March 7 Wadhams verified plaintiff's employment to a lending agency in connection with plaintiff's application for a loan.
Wadhams attempted to explain away the documentary and other strong circumstantial evidence of employment. He testified that he wanted to sell the truck which had been assigned to plaintiff and that he allowed plaintiff to use the truck while making arrangements for a loan to finance the purchase. Plaintiff was to return the truck on February 21, the day that plaintiff delivered other papers as a favor to Wadhams, but Wadhams allowed him to keep it longer on the representation that either plaintiff or a friend would buy it shortly. Wadhams further testified that he verified plaintiff's employment to the lending agency in order to assist plaintiff in obtaining the loan to finance purchase of the truck.
Wadhams also denied authorizing plaintiff to sell the crane, either as an employee or a broker, and he asserted he had never heard of the prospective purchaser. He conceded, however, that plaintiff would have gone back to work for defendant if they had secured the contract for the Capital Annex, because defendant had the license and the bonding capacity and plaintiff had the specialty equipment. Wadhams also explained that he filed the separation notice at plaintiff's request in order to help a valued former employee obtain unemployment compensation.
Wadhams further testified that defendant's insurer first learned of the accident on March 14.[1] On the insurer's advice, Wadhams "set the record straight" by writing to the Office of Employment Security and furnishing the correct information about the date of separation and reason therefor.
The trial judge, while acknowledging doubts about Wadhams' veracity because he had lied in verifying plaintiff's employment and had falsified the separation notice, expressly accepted Wadhams' explanation that Wadhams "thought he was helping a good former employee in his efforts to get unemployment compensation and verified the employment in hopes a loan would be granted to allow Mr. Williams to purchase the truck". The judge also expressed his belief that plaintiff worked on the bid for the Capital Annex project in an attempt "to find work for Keystone so he could be rehired" and that plaintiff discussed the sale of defendant's crane "in hopes of earning a fee for finding a buyer". Finally, the judge expressly disbelieved plaintiff's testimony that his pay day was switched to a first-and-fifteenth basis.
Finding facts and determining credibility are generally functions of the trial court. While the appellate jurisdiction of the courts of appeal in Louisiana extends to both law and facts (so that these courts have the power and authority to review facts), prevailing standards of appellate review require appellate courts to decline to disturb reasonable evaluations of credibility and reasonable inferences of fact. Canter v. Koehring Co., 283 So.2d 716 (La. 1973). These standards are based on the trial court's superior capacity to evaluate witnesses and on the proper allocation of functions between the trial and appellate courts.
The record in the present case, however, even when viewed in the light most favorable to the party that prevailed in the trial court, simply does not furnish a reasonable basis for the trial court's resolution of the employment issue.
All of the evidence in this case points to continued employment, except for Wadhams' testimony and his records that were within his control. At the time of the accident, plaintiff was in defendant's truck that he had regularly used in the course of his employment, and he was pursuing a sale that not only was beneficial to defendant, *1002 but also was being actively sought by defendant. The prospective purchaser of the crane testified that plaintiff purported to represent defendant in the sale of the crane. Wadhams admitted that he was anxious to sell the crane and had said so to a number of his employees, including plaintiff. The architect on the Capital Annex project testified that plaintiff obtained the bid specifications on behalf of defendant, that two addenda were later mailed to defendant, and that defendant's cover letter returning the documents requested a refund of "my deposit". The separation notice and the employment verification, both done at unsuspicious times when Wadhams did not anticipate a workmen's compensation claim, unequivocally stated that plaintiff was still employed by defendant on the date of the accident.[2] Only after plaintiff attempted to recover workmen's compensation benefits did Wadhams repudiate his own written and oral declarations which he now characterizes as falsehoods.
The only evidence that plaintiff's employment was terminated on February 4 was Wadhams' testimony that he laid plaintiff off and his payroll records. These records consisted of printouts from the computer which was entirely within Wadhams' control. This totally self-serving evidence is simply insufficient to contradict the overwhelming contrary evidence of continued employment, most of which came from Wadhams himself.
We conclude that the trial court's determination of the employment issue was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Accordingly, the judgments of the lower courts are reversed, and the case is remanded to the trial court for determination of the remaining issues and for further proceedings.
NOTES
[*] Judge John C. Boutall of the Court of Appeal, Fifth Circuit, participated in the decision by assignment in place of Justice Fred A. Blanche, Jr., recused.
[1] The accident was the fault of the other party, and the tortfeasor's insurer had paid for the repair of the property damage to defendant's truck.
[2] There was also a conflict between Wadhams and his wife, who kept the payroll records, with regard to the policy of issuing separation notices. Mrs. Wadhams testified that the corporation's policy was to send separation notices to the Office of Employment Security upon termination of an employee, while her husband, in explaining why a separation notice was not filed shortly after the alleged layoff on February 4, testified that he did not generally file a separation notice when an employee was laid off for lack of work.