hCANNELLA, Judge.
In a wrongful death action, plaintiffs, the seven surviving children of Sylvia Vick MeKellar (Mrs. MeKellar), appeal from a judgment rendered in favor of defendants, Dr. Robert Treuting, Coroner for the Parish of Jefferson, the Estate of Bennie Verdun and the State of Louisiana, which dismisses plaintiffs’ lawsuit at their cost. For the reasons which follow, we affirm.
The wrongful death and survival action arises from a death that occurred approximately 24 years ago, on November 27, 1972. On that date, in the early morning hours, Mrs. MeKellar, a 34 year old woman, was found by her husband, Chet MeKellar (MeKellar), unconscious and gasping for air. He called to his two oldest stepdaughters for help. They came to assist him and likewise found their mother unconscious and gasping for air. MeKellar then instructed one of his daughters to get some cold towels and the other lato make some coffee. He then called out to his friend, Marty Lee, for help. Marty Lee lived in an apartment on the property behind the house that the McKellars lived in. Marty Lee came right over to help. He telephoned the Grand Isle police department for an ambulance. Two police officers came out to the McKellars’ house. One stayed in the police car and the other, Ambrose Bee-son, came in the house. Officer Beeson testified that upon entering the house he was shown a yellow pill and a pill bottle and was told that it was believed that Mrs. MeKellar had taken an overdose of pills. Officer Bee-son signaled to the other officer in the car to radio for an ambulance. The ambulance arrived within minutes. The ambulance driver, Bennie Verdón, was employed by the Jefferson Parish coroner’s office. He entered the McKellars’ house in the kitchen and officer Beeson told Verdón of the situation. Verdón initially made some remarks concerning his instructions not to transport people on drugs or alcohol. However, he thereafter agreed to transport Mrs. MeKellar to Dr. Luker’s office, as per the coroner’s policy and instructions. Because the nearest hospital to Grand Isle, where Ms. MeKellar was located, was approximately one hour away, it was the coroner’s policy in 1972 for the ambulance driver to transport the patient to the local doctor, Dr. Luker, with whom the coroner had an arrangement. Dr. Luker would examine and treat the patient and advise the ambulance driver whether the patient needed . transportation to the hospital. Marty Lee refused to have Mrs. MeKellar taken to Dr. Luker’s office and insisted that Verdón take her directly to the hospital. Verdón told Marty Lee that he could not or would not take Mrs. MeKellar to the hospital without going first, per his instructions, to Dr. Luker’s office. MeKellar never appeared nor spoke to Verdón. Marty Lee thereupon refused the Lambulance transport, stating that he would take Mrs. MeKellar to the hospital himself. At that point the police officer and Bennie Verdón left the MeKellar home.
Marty Lee then called for a Coast Guard ambulance and was told that they could not take Mrs. MeKellar to the hospital. Approximately twenty minutes after the ambulance left the house, Marty Lee, MeKellar and Mrs. MeKellar drove in the family truck to the hospital. They arrived at the hospital at approximately 2:20 a.m. and Ms. MeKellar was pronounced dead at 2:40 a.m.
In 1973, plaintiffs filed the instant suit against the Coroner of the Parish of Jefferson, Bennie Verdón and the State of Louisiana. In a Declaratory Judgment action, it was held that the Coroner’s office was a state agency for which the State of Louisiana was responsible. Mullins v. State, 387 So.2d *942 1151 (La.1980). Plaintiffs asserted that defendants were liable because Bennie Ver-don’s refusal to transport delayed Mrs. McKellar’s arrival at the hospital, depriving her of a chance of survival. On January 22, 1996, the ease eventually was tried by judge for five days. The trial judge took it under advisement and judgment was rendered on March 19, 1996, in favor of defendants, dismissing plaintiffs’ case at their costs. In brief reasons for judgment, the trial court found “that the delay in bringing Mrs. McKellar to the hospital did not contribute to or cause her death.” The trial court noted that it was particularly impressed with the testimony of the expert medical witness, Dr. Lauro, on this point. The trial court expressly did not decide whether defendants were in any way negligent, finding that such a determination was unnecessary in view of the conclusion that their actions Rdid not cause or contribute to Mrs. McKellar’s death. It is from this judgment that plaintiffs appeal.
On appeal plaintiffs assign four errors. They argue that: (1) the trial court erred in finding that Mrs. McKellar was not deprived of a chance of survival by defendants’ actions; (2) the trial court erred in not addressing the issue of the negligence of the ambulance driver; (3) the trial court erred in failing to award damages to plaintiffs; and (4) the trial court erred in determining issues of costs without taking evidence.
CHANCE OF SURVIVAL
By this assignment of error plaintiffs argue that the trial court erred in finding that defendants did not deprive Mrs. McKel-lar of a chance of survival when the evidence preponderates to the contrary. In support of their argument, plaintiffs rely on the testimony of Dr. Robiehaux, who stated that he believed that Mrs. McKellar died of a heart attack, and Dr. Van Meter, who stated that the chance of survival for a patient with a drug overdose is 90%. Dr. Butcher, the treating physician at the hospital on the night Mrs. McKellar was brought to the hospital indicated on the death certificate that the primary cause of death was “cardiorespi-ratory arrest” (heart attack) with a secondary cause of overdose of Nembutal.
Defendants argue that the trial court was correct in its findings, and rely on the testimony of Dr. Lauro. Dr. Lauro testified that, after studying all of Mrs. McKellar’s records, and speaking with several of the physicians involved, it was his opinion that Mrs. McKel-lar died from pulmonary embolism, occurring as a complication from her recent surgery. He further stated that in 1972, a patient with pulmonary embolisms had no chance of survival. Moreover, taking plaintiffs’ case at its best, there was only a 301 (¡minute delay that resulted by defendants actions. Dr. Lauro testified that 30 minutes would have made absolutely no difference as to Mrs. McKel-lar’s chance of survival. Defendants also point out that the toxicology report showed that Mrs. McKellar did not have drugs in her system, thus the drug overdose theory was negated.
The appellate standard of review is well settled. On appellate review of a factual determination, the reviewing court may not set aside the trier’s findings of fact in the absence of manifest error or unless they are clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Thus, where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra. When findings are based on determinations regarding the credibility of witnesses, the manifest error or clearly wrong standard demands great deference to the trier of fact’s findings, because only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Canter, supra *943 at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone [¡General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Go. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979).
The trial judge, after listening to all the testimony and reviewing the medical depositions and memoranda of counsel, determined that Mrs. McKellar had no diminished chance of survival due to defendants actions and that their actions did not cause or contribute to her death. Based on our review of the record, we find that it supports the trial court determination and that it was not manifestly erroneous.
The most recent Supreme Court expressions concerning the cause of action for lost chance of survival came in the case of Smith v. State Dept. of Health & Hosp., 95-0038 (La.6/25/96), 676 So.2d 543. Therein the court stated:
The issues in loss of a chance of survival eases are whether the tort victim lost any chance of survival because of the defendant’s negligence and the value of that loss. The question of degree may be pertinent to the issue of whether the defendant’s negligence caused or contributed to the loss, but such a tort-caused loss in any degree is compensable in damages.
Allowing recovery for the loss of a chance of survival is not, as the court of appeal suggested, a change or a relaxation of the usual burden of proof by a preponderance of the evidence. Rather, allowing such recovery is a recognition of the loss of a chance of survival as a distinct compen-sable injury caused by the defendant’s negligence, to be distinguished from the loss of life in wrongful death cases, and there is no variance from the usual burden. in proving that distinct loss.
Thus, in a medical malpractice case seeking damages for the loss of a less-than-even chance of survival because of negligent treatment of a | gpre-existing eon-dition, the plaintiff must prove by a preponderance of the evidence that the tort victim had a chance of survival at the time of the professional negligence and that the tortfeasor’s action or inaction deprived the victim of all or part of that chance, and must further prove the value of the lost chance, which is the only item of damages at issue in such a case.
While the court in Smith noted that it was only addressing the issue in the context of a medical malpractice case, we see no reason why the same standards would not apply here.
Thus, for plaintiffs to succeed here, in an action for lost chance of survival, they must prove, by a preponderance of the evidence, assuming Bennie Verdon’s actions were negligent, that Mrs. McKellar had a chance of survival at the time Bennie Verdón refused to take her to the hospital, causing a 30 minute delay in her arrival at the hospital, and that his actions or inactions deprived Mrs. McKellar of all or part of that chance.
Plaintiffs must establish the causal connection between Mrs. McKellar’s death or lost chance of survival and the delay in her getting to the hospital, allegedly caused by Bennie Verdun’s negligent conduct. Plaintiffs not only failed in their proof on this point, but the evidence is to the contrary.
Dr. Albert Lauro was qualified as an expert in emergency medicine. He testified that after reading the medical deposition testimony, as well as the deposition of Mary Vick, the daughter who assisted on the night of Mrs. McKellar’s death, and reviewing the medical records from the hospital, the autopsy report and Mrs. McKellar’s other medical records, it was his opinion that Mrs. McKel-lar died from a pulmonary embolism. He ruled out death by overdose because the toxicology report came back negative. He based his | ¡¡opinion on the fact that Mrs. McKellar had been operated on just two weeks earlier and had undergone a hysterectomy. A known risk of this surgery is that blood will clot, especially in the pelvic area, and that the clots will go to the lungs. He noted that this theory was supported by the fact that the right side of Mrs. MeKellar’s heart was enlarged, indicative that it was pumping against her lung and was not per *944 mitting the blood to flow properly. Plus there was congestion in the lower part of her lungs. He then went on to testify that, assuming Mrs. McKellar died from a pulmonary embolism as he thought, by the time the family was first made aware of the problem, Mrs. McKellar, in 1972, had no chance of survival. He stated that the hospital to which Mrs. McKellar was brought did not, in 1972, have the intensive care equipment to save Mrs. McKellar’s life. He stated unequivocally that an ambulance driver on the scene could not have saved Mrs. McKellar’s life. And he also stated .that it would have made no difference in Mrs. McKellar’s chance of survival to have arrived at the hospital 30 minutes sooner than she did. Her condition was terminal.
Dr. Van Meter was also qualified as an expert in emergency medicine. He testified that if Mrs. McKellar died of a drug overdose, her chance of survival with immediate intervention would have been 80 to 90%. However, he acknowledged that the toxicology .report was negative for drugs in her system. He also testified generally that time is always a factor in resuscitation cases and that there was a chance that Mrs. McKellar’s arrival at the hospital 30 minutes sooner could have made a difference in her chance of survival. Earlier in a deposition, he had stated that he could not testify as to a medical certainty as to whether Mrs. McKellar would have ^survived had she arrived at the hospital sooner. However, at trial, he stated that he had not previously considered the concept of “chance” of survival and that it was now his opinion that she would have had an increased “chance” of survival had she arrived at the hospital sooner. Dr. Van Meter indicated that it was his view that Mrs. McKellar was not breathing when she reached the hospital. He did confirm Dr. Lauro’s opinion that Mrs. McKellar died of pulmonary embolism.
The trial court noted in his reasons for judgment that he was particularly impressed with the testimony of Dr. Lauro in drawing his conclusion that the 30 minute delay in bringing Mrs. McKellar to the hospital did not contribute to or cause her death. The trial court concluded that, even if Mrs. McKellar would have been brought to the hospital immediately by Bennie Verdun, she still would have died. No evidence was admitted at trial to directly contradict Dr. Lau-ro’s testimony.[1] Our review of the record in this case reveals no manifest error in the trial court’s finding, assuming defendants’ negligence as alleged by plaintiffs, that Mrs. McKellar did not lose any chance of surviving because of her delay in arriving at the hospital due to defendants’ alleged negligent conduct.
DEFENDANTS’ NEGLIGENCE
Plaintiffs argue that the trial court erred in not making a determination concerning defendants’ negligence, primarily Bennie Verdon’s conduct in not transporting Mrs. McKellar to the hospital.
| uDefendants argue that the record does not support a finding of defendants’ negligence in this case. Bennie Verdón offered to transport Mrs. McKellar to the local doctor, according to the coroner’s prescribed emergency procedure in effect in 1972 on Grand Isle, and the transport was refused by the adult in apparent authority at the McKellar home. Further, there was expert testimony to the effect that the coroner’s policy of taking any patients to the local doctor before the one hour transport to the nearest hospital was reasonable. Therefore, Bennie Verdun was not negligent in not transporting Mrs. McKellar when the prescribed transport was refused. Further, defendants argue that in view of the court’s finding that Mrs. McKellar had no chance of survival that was lost by the 30 minute delay in her arrival at the hospital, the issue of defendants’ negligence is moot. We agree with this latter argument.
In order for plaintiffs to succeed in a action for lost chance of survival, it must be proven, by a preponderance of the evidence that the tort victim had a chance of survival at the time of the defendant’s alleged negligence, that defendant was negligent and that *945 defendant’s negligent action or inaction deprived the victim of that chance. Here, the plaintiffs have failed in their proof as to the first prong of the action, that the victim had a chance of survival at the time of the tort-feasor’s alleged negligent act. The absence of proof in that regard, without more, defeats plaintiffs’ action. Therefore, we find no error in the trial court’s reliance on this fact alone in dismissing plaintiffs’ action.
hgDAMAGES
Plaintiffs argue that the court erred in not awarding damages to the plaintiffs and seek damages in an amount equal to that recoverable for wrongful death and survival.
As stated in Smith v. State Dept. of Health & Hosp., supra, in an action for lost chance of survival, full recovery for wrongful death is not available for deprivation of a chance of survival.
Furthermore, in this ease, because the trial court found that the victim suffered no lost chance of survival, there was no error in the trial court’s refusal to award any damages.
COSTS
Plaintiffs argue that they should not be cast for costs. They argue that the amounts are excessive or improper and adopt by reference the argument presented in a writ application filed by them from the May 20, 1996 judgment fixing the costs. Mullins v. State of Louisiana, 96-C-540. The writ application was granted in part and denied in part. It was granted on the issue of whether the trial court erred in taxing appeal costs to the plaintiffs, but it was denied on the' issue of the amount of costs taxed.
Defendants argue that the judgment fixing costs is a separately appealable judgment. Plaintiffs have not appealed that judgment. Therefore, it is not a matter properly before this court for appellate review at this time.
In their writ application, plaintiffs argue that the court erred in fixing the amount of the costs because the only thing that was before the trial court atj^that time was the issue of whether plaintiffs had a right to proceed in forma pauperis with the appeal.
Plaintiffs’ position is not supported by the record. In two separate pleadings, the coroner, the parish, the state and the estate of Bennie Verdón filed rules to fix the costs, with detailed lists of the costs incurred by the various defendants. The hearing was set on both of these rules for May 14, 1996 at 9:00 a.m. The judgment fixing costs was a result of this hearing. Accordingly, we find no merit in plaintiffs’ arguments that the issue of the amount of costs was not before the trial court prior to rendition of the May 20,1996 judgment.
Moreover, as argued by defendants, the May 20, 1996 judgment is not properly before this court in this appeal.
Judgment was rendered in this case on the main demand on March 19, 1996. The order for a devolutive appeal from that judgment was signed on April 15,1995. Thereafter, on May 14, 1996, the trial court, on a rule to fix costs, took up the issue of costs. Following that hearing, on May 20,1996, the trial court rendered judgment fixing the amount of the costs. This is a separately appealable judgment. Hoyt v. State Farm Mut. Auto. Ins. Co., 623 So.2d 651 (La.App. 1st Cir.1993), rehearing granted in part, writ denied, 629 So.2d 1179 (La.1993). Plaintiffs have not, as evidenced by the record before us, perfected an appeal from this judgment. Therefore, the amount of costs fixed in the May 20,1996 judgment is not before the court in this appeal.
The part of the March 19, 1996 judgment which holds plaintiffs liable for costs as the party cast in judgment is affirmed.
| ^Accordingly, for the reasons set out above, the March 19, 1996 trial court judgment is affirmed.

AFFIRMED.

. In brief on appeal, plaintiffs have attached Internet excerpts and treatise excerpts on the survival rate from pulmonaiy embolisms. However, this material was not admitted at trial, is not part of the record before us and will not be considered on appeal.