I «CANNELLA, Judge.
Plaintiffs, Cynthia Nelson (Nelson), Wilfred Birden (Birden) and Lawrence Kennedy (Kennedy), appeal from the trial court judgment in favor of defendant, the Parish of Jefferson (the Parish), finding that the Parish was notTiable for the damages which plaintiffs sustained. For the reasons which follow, we affirm.
On March 19, 1995, Nelson was driving her automobile, with Wilfred Birden and Lawrence Kennedy as guest passengers, across the Bayou Segnette bridge. As they crossed the bridge and descended towards the bottom, they heard a loud noise as something fell onto the front windshield of their vehicle. Nelson reacted instinctively by slamming on her brakes which caused both passengers to lurch forward sustaining injuries. Thereafter, it was determined that the glass globe from the bridge light had fallen and hit the lower middle of the front windshield. Plaintiffs filed suit against the Parish for property damage to the vehicle and personal injuries which they sustained. The case was bifurcated and, by agreement of the parties, only liability was tried.
| a At trial the parties stipulated that the Parish owned, operated and had control over the Bayou Segnette bridge lights and *728 that a large portion of the globe or glass lens from one of the lights fell on Nelson’s vehicle. Nevertheless, the trial court rendered judgment in favor of the Parish, finding no liability on its part. In reasons for judgment, the trial court found that the plaintiffs failed to carry their burden of proving by a preponderance of the evidence that the light fell due to inadequate maintenance by the Parish. The court found that plaintiffs did not prove that the Parish had either prior notice or constructive notice of any defect in the light or that the Parish could have done anything to prevent the accident at issue. It is from this judgment that the plaintiffs appeal.
On appeal plaintiffs’ primary argument is that the trial court erred in finding that they did not meet their burden of proof. They contend that the trial court was clearly wrong in its factual findings that the Parish did not have notice of the defect in the light and that the Parish could not have done anything to prevent the accident. Plaintiffs contend that they met their burden of proof by establishing that the Parish had inadequate maintenance procedures. The testimony favorable to the Parish should not have been given any weight' because plaintiffs contend that the Parish’s witnesses were not credible. Further, plaintiffs argue that an adverse inference should have been drawn against the Parish for their failure to produce the light fixture in question.[1]
The Parish counters that factual determinations made by the factfinder based on credibility of the witnesses are to be given great deference and are not to be set aside on appeal absent a finding of manifest error which is not present in |4this record. Plaintiffs simply did not meet their burden of proof in this case, and there was no error, manifest or otherwise, in the trial court factual findings in defendant’s favor.
As stated above, it was stipulated by the parties that part of the globe or lens from the bridge light fixture fell on Nelson’s vehicle as she traveled over the bridge and that Nelson did nothing to cause it. Nevertheless, to be successful in their action, plaintiffs must prove either that, under La. C.C. art. 2315 the Parish was negligent or, under La. R.S. 9:2800 the Parish had actual or constructive notice of the defect which caused the damage prior to the occurrence, had a reasonable opportunity to remedy the defect and failed to do so.
Plaintiffs attempted to meet their burden of proof, in large part, through the testimony of one witness, a co-employee of Nelson’s, Jonas Holmes (Holmes). He testified that he works for the Louisiana Department of Transportation where he is the supervisor for the Belle Chasse Tunnel, with authority for other tunnels and underpasses. He has worked for the State in this capacity for 18 years and prior to that he worked for New Orleans Public Service, which is now known as Entergy. Basically, he testified that' there are clamps that hold the globes or lenses on these light fixtures which can rust and deteriorate due to vibrations from traffic. He further testified that as supervisor of the tunnel, he checks the lights individually every 2 months by diverting traffic and positioning a bucket truck under the light which takes him up to the light for a physical inspection. He testified that a visual inspection of the lights from the road way while driving 35 miles per hour was “not too great.” He also testified that the globes on the lights were like auto glass in that they could get hit and then with the vibrations, over time, the crack would spread until a piece of the globe might fall. He also testified that he observed from 1 Kphotographs that 5 of the light fixtures on the bridge had electrical *729 tape wrapped around them. He surmised that this might be a repair method.
Nelson testified that she was traveling over the bridge and heard a loud noise as something fell on her front windshield. She further testified that upon exiting the vehicle and looking up at the light, she could see the rim of the light in question hanging down or dangling.
Plaintiffs also called defendant’s employee, Thomas Hartsell (Hartsell), who testified that he only inspected each light manually with a bucket truck once a year. Otherwise, he inspected the lights once a week, on Mondays, by driving over the bridge in one direction and observing the lights and then driving back in the other direction and observing the lights again. He also stated that he turned on the lights to see if any were burned out. Plaintiffs also consider it favorable to their action that he testified that about a year prior to the accident one light was opened at the rim and hanging down and it was repaired. While in the bucket truck, he did not, at that time, physically inspect all of the other lights.
Plaintiffs could not examine or produce the actual light fixture in question because Hartsell had taken it down, photographed it and then sent it to Southern Scrap, as was customary.
One theory of plaintiffs’ case was that the inspection and maintenance of the lighting system on the Bayou Segnette bridge was inadequate. Therefore, it should have been found that the Parish had constructive knowledge of the defect and did not act reasonably in rectifying the problem.
In defense, the Parish presented the testimony of Hartsell that on the day following the accident, when he went out to the bridge he observed, contrary to Nelson’s testimony, that the rim of the light fixture was not hanging. Most of the globe or lens was gone. Three days later, he went out to the bridge with a bucket | (¡truck and removed the light fixture. He testified that the bulb in the fixture was also broken. Further, he noted that the reflector inside the fixture was punctured in several places indicating that it had been shot with a shotgun. He stated that he observed nothing wrong with the latch on the light fixture. He testified that in the ten years in which he had worked for the Parish in this capacity, he had never known of a light falling on a vehicle and had only known of one instance when the rim was hanging. He testified that he inspected the lights visually once a week, on Monday, by driving back and forth over the bridge and by lighting them. He did not observe that the light in question was out on Monday when he inspected the lights. He opined that his inspection technique was appropriate under the circumstances, in view of the heavy traffic on Bayou Segnette bridge, the fact that it is just a two lane bridge and to do manual inspection with a bucket truck requires that traffic be diverted to alternate routes for several hours. He stated that visual inspection of every light with a bucket truck would take about eight hours to complete, during which time the bridge must be closed. That is why they only conduct such an inspection once a year when the bridge is otherwise closed for structural inspection. Hartsell also contradicted Holmes’ testimony regarding the nature of the glass globes. Hartsell testified that they were not like auto glass but were “honeycombed” in design so that they would shatter on impact. Also he testified that the electrical tape observed on some of the light fixtures had been there since before his employment, but not on the light fixture involved in this case and it had nothing to do with holding the globes in the fixtures.
The Parish noted that one plaintiff, Kennedy, did not testify at all and the other, Birden, although he did testify, he did not confirm Nelson’s testimony regarding the hanging rim.
Photographs of the vehicle, the light fixture in question and all the lights on 17the *730 bridge were admitted into evidence, along with a memorandum by Hartsell on the day after the accident in which he described the damage to the light fixture and did not state that the rim was hanging.
On cross examination of Holmes, the defense asked if it was the industry standard to inspect street lights with a bucket truck once every two months and he answered in the negative. He stated that it was simply the way that he did it. The defense also asked Holmes whether, viewing the photographs, it appeared that the light fixture had been shot and he stated that it did appear to be a possibility. He also stated that in his eighteen years of experience only one light had fallen because of vibration.
Following the trial, with observation of the witnesses and examination of the evidence, the trial court found that it was persuaded by Hartsell’s testimony that he saw no problem with the light fixture in question in his inspection just days before the accident. Therefore, the trial court concluded that the Parish did not have notice of the defect and that it could have done nothing to prevent the accident.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the factfin-der’s findings of fact in the absence of manifest error or unless they are clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra. When findings are based on determinations regarding the credibility of witnesses, the manifest error or clearly wrong standard demands great deference to the trier of fact’s findings because only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La. 1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La. 1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979).
We find that, after reviewing the transcript, exhibits and briefs, there was no manifest error in the trial court’s factual findings and conclusions. Plaintiffs simply did not meet their burden of proof in establishing liability on the part of the Parish. There was no evidence of any defect in the light fixture in question. Rather, the record indicates that, by an act of a third party vandal, the fight had been shot and damaged sometime within the three or four days preceding the accident. Whether Hartsell could have observed a crack in the globe by his visual inspection or not, he testified that the bulb in the fight was also broken following the accident but that on his Monday inspections he turns the fights on and that the fight was not out at that time. Further, no evidence was presented of industry standards regarding proper maintenance techniques of bridge fights under the circumstances of this case.
[ ¡/Therefore, based on this record, we do not find that the Parish was either negligent or had constructive notice of a defect, with reasonable time to rectify it *731 and faded to do so. We find that the judgment of the trial court that the' Parish was not liable for plaintiffs’ damages is supported by the record and not manifestly erroneous or clearly wrong.[2]
Accordingly, the judgment of the trial court dismissing plaintiffs’ case is affirmed. Costs of appeal are assessed against plaintiffs.
AFFIRMED.

. Concerning plaintiffs adverse inference argument, it should be noted that plaintiffs made no objection at trial to the non-production of the light fixture in question. Moreover, even if an inference were applied in plaintiffs' favor, it is rebuttable by direct evidence, as presented here, that there were no problems with the latch and the only defect in the light fixture was from a gunshot.

. Plaintiffs also argue that liability should be assessed against the Parish under the doctrine of res ipsa loquitor. However, that doctrine is not applicable where, as here, the accident is not of a type that could not happen if proper care were exercised. Prestenbach v. Louisiana Power and Light, 93-656 (La.App. 5th Cir. 4/14/94), 638 So.2d 234.