1 .CANNELLA, Judge.
Defendants, Elton Bernard (Bernard), individually, and Bernard’s Brand Cajun Crawfish Company, Inc. (Bernard’s Brand), appeal from a judgment in favor of plaintiff, Southeast Seafood Brokerage, Inc. (Southeast Seafood), in the amount of $69,680.50 plus interest and costs. For the reasons which follow, we affirm in part and reverse in part.
In July of 1996, Robert DeJean (DeJe-an), representing Southeast Seafood, met with Bernard, representing Bernard’s Brand, to make arrangements for the packaging, supplying and selling of pasteurized crabmeat by Southeast Seafood to Bernard’s Brand. Bernard’s Brand wanted 12 ounce containers of various types of pasteurized crabmeat, packaged in glass jars, with the Bernard’s Brand label. There was no written agreement between the parties. However, Southeast Seafood alleges that the price was based on the 12 ounce jar at $11 for jumbo lump crabmeat, $7.50 for back-fin crabmeat, $6.50 for claw crabmeat and $6 for crabmeat fingers. Southeast Seafood further alleges that *810 they agreed that | ^payment was due within 7 days of invoicing. Deliveries began in September of 1996 and continued through November of 1996. Each delivery invoice was signed by Bernard. However, payment was not being timely made. Bernard alleges that the pricing was to be based on a per pound unit. Therefore, he thought that he was being overcharged. Bernard contends that he communicated that to DeJean, a fact which DeJean disputes. Bernard testified that he understood that as part of their agreement, he could return any unsold crabmeat to Southeast Seafood at any time before the expiration date, for full credit to his account.
DeJean testified that due to nonpayment he stopped deliveries to Bernard’s Brand in November of 1996. At that time, Southeast Seafood contends that defendants owed $135,726. In late November of 1996 Southeast Seafood received a check from Bernard’s Brand for $26,082. Southeast Seafood contends that they continuously telephoned Bernard’s Brand but were told that Bernard was not available. Finally, DeJean reached Bernard in early December of 1996 and was told by Bernard that sales were not going as expected and that he could not pay further at that time. Bernard was hospitalized in January of 1997 and underwent bypass surgery. De-Jean again contacted Bernard in February of 1997 and received another check from him for $32,448. DeJean claimed that he informed Bernard that, if the product was returned, he would try and sell it for him against his account. However, Bernard did not send the crabmeat back to Southeast Seafood until early March of 1997. By that time, the Lenten season had passed and there was not as much demand. Southeast Seafood did sell $7,938 of the crabmeat and that sum was credited to Bernard’s Brand account, bringing the debt down to $69,680.50. The crabmeat was delivered to |4Southeast Seafood on March 4, 1997 and just 2 days later, on March 6, 1997, it was noticed that much of the crabmeat was discolored, contained bubbles, or was in a deteriorated condition. An inspector from the Louisiana State Health Department checked the crabmeat and determined that it was “unfit for human consumption” and ordered it destroyed. Bernard’s Brand refused to pay the remainder of their bill and Southeast Seafood filed suit.
Following a bench trial, the trial judge gave lengthy reasons in rendering judgment in favor of Southeast Seafood. Among other findings, the trial court expressly noted that he found the Bernard’s Brand witnesses’ testimony about the agreed upon price lacking in credibility and, to the contrary, found the Southeast Seafood witnesses’ testimony to be credible, consistent and corroborated by the facts. He also specifically found that the crabmeat was in a deteriorated condition when it was returned to Southeast Seafood by Bernard’s Brand. Therefore, the trial court, on February 22, 1999, rendered judgment in favor of Southeast Seafood. Further, it held Bernard personally liable for the debt because the trial court believed that Bernard changed his testimony regarding his placing DeJean’s name on the invoice covering the return of the crab-meat to Southeast Seafood. Defendant filed a motion for new trial, which was denied on March 5, 1999. Defendant filed a motion for a suspensive appeal from the February 22, 1999 judgment, which was granted.
On appeal, defendants assign 3 errors. First, they argue that the trial court erred in finding that there was a sales agreement between the parties by finding that the parties did agree as to price and quantity of the crabmeat to be sold.
Southeast Seafood argues to the contrary that these factual findings by the trial court are amply supported by the record and are not clearly wrong.
IsThe Bernard’s Brand argument on this point centers on the trial court’s factual finding that the parties agreed on a per 12 ounce jar price and not a price per pound *811 as argued by Bernard’s Brand. The trial court also made the finding that Bernard’s Brand agreed to take as much of the product as Southeast Seafood could supply to them.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the factfin-der’s findings of fact in the absence of manifest error or unless they are clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
When findings are based on determinations regarding the credibility of witnesses, the manifest error or clearly wrong standard demands great deference to the trier of fact’s findings, because only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General 6Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979).
Here, we find no manifest error in the factual findings of the trial court. De-Jean testified that the parties had agreed to a per jar pricing and that Bernard’s Brand had agreed to take as much crab-meat as Southeast Seafood could supply. DeJean stated that if the price were per pound, he would be losing money on each case. That testimony was corroborated by Bruce Maghan (Maghan), Alvin Folse (Folse) and Craig Pizzolato (Pizzolato). Maghan testified that a 12-ounce jar is the standard in the industry and that Bernard had requested the 12-ounce jar and had personally selected and approved the label for the product. Folse was at the initial meeting between Bernard and DeJean and recalled Bernard stating that he could handle whatever was supplied. Pizzolato testified that Bernard signed each of the invoices and that no one had ever complained about the pricing. Further, in his own testimony, Bernard admitted that he told DeJean that he could handle whatever was supplied.
Moreover, in his reasons for judgment the trial court specifically noted the demeanor of the witnesses and his evaluation of their credibility. The trial court found that the Southeast Seafood witnesses’ testimony was consistent, credible and corroborated by the facts. He also found to the contrary regarding the testimony of the Bernard’s Brand witnesses. Considering the foregoing, we find no manifest error in the trial court factual findings that a price per jar and quantity of crabmeat to be shipped were agreed upon by the parties.
17The second agreement which Bernard’s Brand questions is whether or not Southeast Seafood personally owned all the crabmeat for which Bernard’s Brand has been held liable. In other words, Bernard’s Brand is arguing that Southeast Seafood did not actually own all the crab-meat in question, but rather, was brokering it for the real owners. Bernard’s Brand contends that if Southeast Seafood *812 did not own the crabmeat then Bernard’s Brand should not have to pay them for it.
Southeast Seafood argues to the contrary that whether they owned the crab-meat or not is immaterial to the question of whether Bernard’s Brand is liable to them for it. Southeast Seafood had a contract with Bernard’s Brand whereby Southeast Seafood would deliver crabmeat to Bernard’s Brand, who would pay Southeast Seafood for the crabmeat within 7 days of the delivery. Whether Southeast Seafood owned the crabmeat or was brokering it was not an issue in the contractual agreement between the parties. Southeast Seafood, whether they owned the crabmeat or not, had authority to sell the crabmeat to Bernard’s Brand.
We find no merit in the Bernard’s Brand argument on this point. This suit is an action for breach of contract. The contractual agreement between the parties was that Southeast Seafood would deliver the pasteurized crabmeat to Bernard’s Brand, packaged and labeled as agreed and Bernard’s Brand would pay for the crabmeat delivered within 7 days of invoicing. This contractual agreement was breached, for which it has been determined that Bernard’s Brand owes damages. While there may have been some additional conditions to the contract regarding the return of the crabmeat to Southeast Seafood, they were rendered not applicable since the crabmeat was allowed to deteriorate before it |swas returned. Whether Southeast Seafood owned the crabmeat or not, an issue that was not raised in the lower court. Southeast Seafood had authority to sell the crabmeat. Therefore, this argument by defendants on appeal provides them no grounds for reversal of the trial court judgment for breach of contract.
Finally, Bernard argues that the trial court erred in finding him personally liable for the damages. He argues that at all times he represented Bernard’s Brand in reaching the contractual agreement with Southeast Seafood and it was the company that breached the agreement.
Southeast Seafood argues that Bernard acted personally in certain aspects of their dealings, namely, placing DeJean’s name on the invoice evidencing the return of the crabmeat by Bernard’s Brand to Southeast Seafood. Likewise, the trial court seems to have given that factor undue weight.
The facts of this case, as stated above, support an action for breach of contract. The contractual agreement was made between the two companies, Southeast Seafood and Bernard’s Brand. Therefore, only the company, Bernard’s Brand can be held liable in breach of contract for the damages sustained as a result of that breach, absent some evidence that Bernard acted personally rather than as a representative of the company. There is no such evidence in this record. While Bernard, personally, may have placed De-Jean’s name on the invoice[1], it is not relevant to a matter at issue in this case.[2] Damages were awarded for breach of contract in an amount equal to the value of the | flCrabmeat that had been delivered and not paid for. Bernard is not personally liable for that debt.
*813 Accordingly, the judgment of the trial court is reversed insofar as it held Bernard personally liable for the damages. In all other respects, the judgment is affirmed. Costs of appeal are assessed against Bernard’s Brand.
REVERSED IN PART; AFFIRMED IN PART.

. The placing of Dejean's name on the invoice evidencing the return of the crabmeat from Bernard's Brand to Southeast Seafood is in dispute. Bernard admits that he put the name on the invoice as a bookkeeping measure to show who accepted the crabmeat and not as a forgery. Southeast Seafood argues that it was an attempted forgery. It is not apparent what difference it makes since the return of the crabmeat is not a matter in dispute between the parties.

. It seems that the trial court was attempting to penalize Bernard for what it thought was an inconsistency in Bernard’s testimony from the hearing on the exception and his deposition and trial testimony. While this may be a matter for contempt, it is not grounds for holding Bernard personally liable on the breach of contract debt.