KIMBALL, J.,
concurring in part and dissenting in part.
While I agree with the majority’s decision today in as far as the termination of *92 R.D.L.’s parental rights are concerned, I respectfully dissent from the court’s holding that the trial court committed manifest error by not terminating C.R.B.’s parental rights.
The lower courts were presented with a very difficult question with respect to C.R.B., because, unlike R.D.L., she strongly contests having her parental rights terminated, clearly loves her children, and is able to play some role, even if limited, in their lives. The trial court carefully considered the situation, the testimony of the experts and C.R.B., and the children’s feelings before making its determination not to terminate C.R.B.’s parental rights. As the court of appeal noted, the trial judge clearly struggled with the question of termination in light of C.R.B.’s mental disability and her ability to participate in her children’s life, even if not as a primary care-giver. He thoughtfully and cautiously weighed all of the evidence, including his ex parte interview of G.J.L. and M.M.L., before making the factual finding that it was not in the children’s best interest to terminate C.R.B.’s rights.
It is well-settled that a reviewing court must accord great deference to the factual findings of the trial court and cannot set aside those findings of fact in the | ¡.absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). This well-settled principle of review is based not only on the trial court’s better capacity to evaluate witnesses and detect variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said, but also on the proper allocation of trial and appellate functions between the respective courts. Rosell, 549 So.2d at 844 (citing Canter, 283 So.2d at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979)).
It is essential that this court accord the proper degree of deference to a trial judge’s factual determinations in cases involving the sensitive questions of child custody and termination of parental rights, because of the integral role the trial judge plays in those proceedings. In the instant case, the trial judge not only directly participated in the fact-finding process, but had the distinct advantage of personally observing and questioning both of the children and their mother before making his conclusions, whereas this court could only review the cold record on appeal. Upon its review of the record, I believe that the majority of this court failed to properly defer to the trial court’s factual determinations. The trial judge’s denial of the state’s petition was based on his findings that C.R.B. loves her children, that her inability to act as a primary care-giver to them is through no fault of her own, that the children are concerned for their mother’s welfare, that the children are well-adjusted in their foster homes, and that they would benefit by maintaining a relationship with their mother. |3In my view, these factual findings are not manifestly erroneous based on the evidence presented at the termination hearing.
No one at the hearing, nor any court, has disputed that C.R.B. loves her children. While Mr. Levinstone, the children’s social worker, testified that in his opinion, adoption was probably the best *93 option for these children, he also stated that the children, G.J.L. in particular, love and worry about their mother and that contact with her could be beneficial for the children, especially G.J.L. Moreover, on cross-examination, when C.R.B.’s attorney asked Mr. Levinstone specifically whether it was in the children’s best interest to terminate C.R.B.’s rights and leave the children in “limbo” waiting on a possible adoption, he stated he could not give her an answer at that time.
Similarly, Dr. Buxton would not directly answer the question of whether it was his opinion that it would be in the children’s best interest to terminate parental rights. When the trial court posed that question, Dr. Buxton explained that he “carefully avoid[s] saying terminate parental rights,” because he does not believe that to be his role. Later during the hearing, he told the trial court that he did not know what would be in these children’s best interest given the circumstances. Dp. Buxton further testified that it “could be good” for the children to maintain contact with their mother and that such contact is usually favorable. He additionally suggested that it might be satisfactory for the children to stay in a good, stable foster home with care-givers to whom they were already attached, if it could be assured that they would stay in that home for a long time. Finally, Dr. Buxton noted that the children would suffer trauma if the bonds, attachments, and “what little bit of stability” they had developed with their foster famines were taken away.
Dr. Bergeron likewise refused to testify specifically that it was in the children’s best interest to terminate their parents’ rights. However, he opined that “the children |4need to move on, one way or another,” and that the best thing for them was to be placed in a permanent living arrangement, which regular foster care placement could not accomplish. His conclusion was that, generally, the children would suffer more greatly by the risk of leaving them in foster care homes with the possibility of being removed at any time than by uprooting them again for placement in new adoptive homes. However, he agreed with Dr. Buxton that maintaining contact with their mother “could work” if the children could be placed permanently with a committed foster family and could still visit with their mother. He also agreed with Dr. Buxton that the children would suffer a series of traumatic events if C.R.B.’s rights were terminated, they were taken out of the foster homes where they had been placed for three years, and they were placed with new adoptive families. He concluded that, unfortunately, “when you get to the point [the children] are at right now, it’s almost impossible to talk about what’s in the best interest,” although he opined that “trauma now might be beneficial in the long run.”
Based on the experts’ testimony, which the court of appeal understandably found to be somewhat ambivalent, I believe the trial court’s determination that it was not in the children’s best interest to terminate C.R.B.’s parental rights is adequately supported by the record. The trial court considered the expert testimony that continued contact with their mother might be beneficial to the children, that C.R.B. loves her children and through no fault of her own is prevented from acting as their primary care-giver, that the children care for their mother and are concerned about her well-being, and that the children are content and doing well in their respective foster homes. The trial court reasonably concluded that C.R.B. is a “sincere, caring and good [person],” who simply has a mental disability, and that she and the children should not be punished for that by severing all familial bonds between them. Additionally, upon interviewing the children, *94 the trial court found that, “despite their | ^tender ages,” the children were very bright and keenly aware of their mother’s and their own situations.
In light of this evidence, I do not believe it can properly be said that the trial court was manifestly erroneous in finding that the state had not demonstrated that terminating C.R.B.’s parental rights and breaking the fundamental tie between the children and their natural mother is in the children’s best interest. Even if this court might have weighed the facts and decided the issue differently in the first instance, I believe the court should affirm the trial court’s finding that it is not in the children’s best interest to terminate C.R.B.’s parental rights, because that finding is reasonably supported by the evidence presented at the termination hearing. See Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, p. 8 (La.7/5/94), 639 So.2d 216, 221.
However, I recognize that the trial judge’s determination to maintain the status quo and leave the children in what he, himself, called a temporary situation was not an appropriate resolution to the proceedings in light of Louisiana and federal law and policies requiring that children in foster care be moved into permanent placement, preferably with an adoptive family, if at all possible. See Adoption and Safe Families Act of 1997, Pub.L. No. 105-89, 111 Stat. 2115 (codified in 42 U.S.C. § 671, et seq.; 42 U.S.C. § 1305, et seq.); La. Child. Code art. 701, et seq. However, Article 702(C) and (D)(5) clearly recognize that, in some instances, courts may have to consider other alternative permanent living arrangements for children in need of care, when the trial court determines that to do so is in the children’s best interest. Article 702(C) allows that a trial court may determine that a child adjudicated to be in need of care should remain permanently in foster care with a specific foster family. Subsection D of Article 702 outlines the priorities of permanent placement a trial court is to consider and provides that in some cases the most appropriate plan for a child in need of care | fimay be placement with a legal guardian or placement in the least restrictive, most family-like alternative permanent living arrangement.
However, while the trial court committed legal error by failing to determine a permanency plan for G.J.L. and M.M.L., that error does not in any way implicate the trial court’s factual findings with respect to whether it is in the children’s best interest to terminate C.R.B.’s parental rights. Therefore, in my opinion, the proper resolution would be to affirm the trial court’s denial of the state’s petition to terminate C.R.B.’s parental rights, but to remand the case to the trial court so that it may consider the most appropriate permanent plan of placement for the children in light of federal and state law. Accordingly, I respéctfully dissent in part from the majority’s decision, because the trial court’s determination that it was not in the children’s best interest to terminate C.R.B.’s parental rights is not manifestly erroneous in light of the evidence presented at the hearing. Conversely, I agree with the majority that the record does not reasonably support the trial court’s determination not to terminate R.D.L.’s rights.